Law Offices of Gregory Messer
Proposed Attorneys for 1494-1496 CIA LLC
*Debtor-in-Possession*
26 Court Street, Suite 2400
Brooklyn, NY 11242
(718) 858-1474
Gregory Messer

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| 1494-1496 CIA LLC, | Case No: 14-43767-nhl |
| Debtor. | |

-----------------------------------------------------------X

**PROPOSED INTERIM ORDER**
**AUTHORIZING USE OF SECURED PROPERTY AND CASH COLLATERAL**
**AND PROVIDING ADEQUATE PROTECTION TO SECURED CREDITORS**

**WHEREAS,** on July 24, 2014 (the "Filing Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court for the Eastern District of New York (the "Court");

**WHEREAS,** immediately subsequent to the filing, the Debtor continues to operate and manage its property and affairs as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code;

**WHEREAS,** as of the Filing Date, the Debtor owns and operates certain retail property located at 1494-1496 Coney Island Avenue, Brooklyn, New York (the "Property"). The Property has four residential tenants and one commercial tenant;

**WHEREAS,** the Property is subject to two mortgages: one in favor of CXA 16 Corporation ("First Mortgagee") in the amount of approximately $1,423,661.43 as of December 19, 2012 (the "First Mortgage"); and another in favor of Chris Fountoukis, Georgia Fountoukis, Margaret Molinelli, and Josephine Licata (collectively, the "Secondary Mortgagee" and,

collectively with First Mortgagee, the "Secured Creditors") in the amount of $255,000.00 (the "Second Mortgage").

**WHEREAS,** each of the above-mentioned mortgages includes or could be deemed to include an assignment of rents, thereby granting the mortgagees a security interest in the moneys collected by the Debtor from the residential and commercial tenants (the "Rent Collateral");

**WHEREAS,** good cause has been shown for the entry of this Order. The Debtor asserts that, without the use of the Rent Collateral, the Debtor's estate will be irreparably harmed, and the Debtor will be unable to preserve the value of the estate and its assets;

**WHEREAS,** the terms of the use of the Rent Collateral authorized hereunder are fair and reasonable under the circumstances. The Debtor asserts that entry of this Stipulation and Order will be in the best interests of the Debtor's estate and its creditors. The Debtor further asserts that the entry of this Stipulation and Order is in the best interests of the tenants to whom it provides use and occupancy, which, concurrently, serves to preserve the value of the Debtor's estate;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. All of the Recitals set forth above are incorporated by reference into and made a material part of this Order, and the Debtor represents and warrants to Secured Creditors that the statements therein are true and correct.

**Debtor's Cash Collateral Authority**

2. In order to avoid irreparable harm to the Debtor's estate and in the absence of any Default (as defined below) under this Order and subject to its terms, the Debtor is authorized to use the Rent Collateral to maintain its business in accordance with its 12-month projections attached to the Debtor's Motion for Authorization to Use Cash Collateral. This authorization shall terminate (i) on November 1, 2014 (the "Order Period"), (ii) upon Default, or (iii) on the

effective date of a confirmed Plan, whichever occurs first ("Termination"), unless extended in writing by the Court. Upon Termination, the rights granted to the Debtor to use the Rent Collateral shall cease; provided, however, that the security interests, pledges, liens, and other rights and protections granted to Secured Creditors hereunder shall remain in effect until the indebtedness due Secured Creditors is paid irrevocably and in full, or is otherwise terminated pursuant to an order of the Court.

3. Subject to the terms and conditions below, the Debtor shall obtain Secured Creditors' prior written consent for the use or expenditure of the Rent Collateral for all sums, except for those provided for in the 12-month projections, in excess of $5,000.00 per expenditure. Secured Creditors shall not unreasonably withhold their consent to such expenditures, provided however, that nothing herein constitutes an agreement or commitment by Secured Creditors to provide such consent or to lend any amount or otherwise make any further financial accommodation.

4. To provide First Mortgagee with adequate protection of their interest in the Rent Collateral, including, without limitation, any cash collateral as defined in § 363(a) of the Bankruptcy Code, the Debtor on behalf of the Debtor's estate hereby grants First Mortgagee a first lien on and a first-priority security interest in all the Rent Collateral, including all post-petition cash collateral and any cash collateral proceeds therefrom, with the liens of First Mortgagee attaching thereto, wherever located, <u>however</u>, except to the extent that their claim is unsecured, First Mortgagee shall not have any interest in any and all causes of action of the estate, or recoveries, under Chapter 5 of the Bankruptcy Code, the liens of the Levites Creditors shall be subject to the payment of (a) any required payment to the United States Trustee for the Eastern District of New York ("U.S. Trustee"), (b) professional fees and expenses incurred prior

to Termination (as defined herein) by the Debtor as debtor-in-possession, and its professionals retained in this Chapter 11 case, which include but are not limited to the Law Offices of Gregory Messer (the "Debtor's Counsel"), any accountants for the Debtor duly retained by Order of the Court (the "Debtor's Accountants"), and any broker to be retained by the Debtor, to the extent the broker is not paid from the buyer's premium in connection with the sale of any property, in an aggregate amount not to exceed $100,000.00 (the "Professional Fee Carve Out"), and (c) a carve out in favor of the general unsecured creditors in the aggregate sum of $15,000.00 (the "General Unsecured Creditors Carve Out").

5. Notwithstanding any language to the contrary, however, such First Mortgagee liens are subject to payment of such professional fees and expenses only upon the application to and written authorization of this Court. Debtor's Counsel shall provide the Secured Creditors with copies of any and all statements of fees and expenses filed in connection with any fee or expense application submitted by the Debtor or its professionals. Nothing herein shall limit the Secured Creditors' rights to object to any professional fee or expense application.

6. To provide the Second Mortgagee with adequate protection of their interest in the Rent Collateral, including, without limitation, any cash collateral as defined in § 363(a) of the Bankruptcy Code, the Debtor on behalf of the Debtor's estate hereby grants the Second Mortgagee a second lien on and a second-priority security interest in all the Rent Collateral, including all post-petition cash collateral and any cash collateral proceeds therefrom, with the liens of the Secondary Mortgagees attaching thereto, wherever located, however, except to the extent that their claim is unsecured, the Secondary Mortgagees shall not have any interest in any and all causes of action of the estate, or recoveries, under Chapter 5 of the Bankruptcy Code, the liens of the Secondary Mortgagees shall be subject to the payment of (a) any required payment to

the United States Trustee for the Eastern District of New York ("U.S. Trustee"), (b) professional fees and expenses incurred prior to Termination (as defined herein) by the Debtor as debtor-in-possession, and its professionals retained in this Chapter 11 case, which include but are not limited to the Law Offices of Gregory Messer (the "Debtor's Counsel"), any accountants for the Debtor duly retained by Order of the Court (the "Debtor's Accountants"), and any broker to be retained by the Debtor, to the extent the broker is not paid from the buyer's premium in connection with the sale of any property, in an aggregate amount not to exceed $100,000.00 (the "Professional Fee Carve Out"), and (c) a carve out in favor of the general unsecured creditors in the aggregate sum of $15,000.00 (the "General Unsecured Creditors Carve Out").

7.  Notwithstanding any language to the contrary, however, such Second Mortgagee liens are subject to payment of such professional fees and expenses only upon the application to and written authorization of this Court. Debtor's Counsel shall provide the Secured Creditors with copies of any and all statements of fees and expenses filed in connection with any fee or expense application submitted by the Debtor or its professionals. Nothing herein shall limit the Secured Creditors' rights to object to any professional fee or expense application.

**General Provisions**

8.  The Professional Fee Carve Out and the General Unsecured Creditors Carve Out are subject to conditional repayment by the Debtor on behalf of the Debtor's estate upon recovery realized by the Debtor for the benefit of the Debtor's estate, after payment of administrative claims and costs of the Debtor and its professionals, in connection with any adversary proceeding.

9.  The liens, pledges, and security interests granted to the Secured Creditors pursuant hereto are in addition to their respective security interests and liens and shall be deemed

perfected without reliance upon the filing of any financing statements or recordation of any documents or other act of filing, nor shall the Secured Creditors be required to obtain security or similar agreements or corporate resolutions, file further financing statements, or record any documents (although the Secured Creditors are granted the right to file such financings statements and obtain such security agreements), or take any other steps under applicable law to create or perfect the security interests, pledges, and liens granted in this Order.

10. The Debtor shall maintain all of its bank accounts (collectively, the Debtor's Accounts) at a depository (the "Bank") approved by the U.S. Trustee, and all cash and cash equivalents shall be held in the Debtor's Accounts. The Debtor shall provide evidence of the existence of the Debtor's Accounts upon demand.

11. This Order shall be without prejudice to the Secured Creditors' right to seek relief from the automatic stay under § 362 of the Bankruptcy Code. Subject to § 362 of the Bankruptcy Code, this Order does not and shall not constitute a waiver by the Secured Creditors of any rights that they may have with respect to the Rent Collateral or other property of the Debtor's estate, including, without limitation, their rights as a secured party under the mortgage agreement, the Uniform Commercial Code, the Bankruptcy Code, and other applicable law. The automatic stay of § 362(a) of the Bankruptcy Code is modified to the extent necessary to effect the provisions of this Order, including, without limitation, to permit the Secured Creditors to apply all proceeds of the Rent Collateral and all payments received as contemplated hereby in permanent reduction of the amounts owed to them by the Debtor's estate.

12. The Secured Creditors may seek any additional protection as they may require with respect to the Rent Collateral. Nothing contained in this Order shall constitute, or shall be deemed to constitute, and admission by the Secured Creditors that their interests are adequately

protected within the meaning of § 361 of the Bankruptcy Code on the date of this Order or at any future date, and the Secured Creditors reserve their rights to claim that the provisions of this Order do or do not constitute adequate protection of their interests in the Rent Collateral. The Debtor also reserves all rights with respect to adequate protection (a) granted as specifically set forth herein, and (b) in the event hereafter sought by the Secured Creditors.

13. The security interests, pledges, liens, and all other protections granted to or in favor of the Secured Creditors hereunder shall remain in effect until all obligations and debts of the Debtor's estate to the Secured Creditors, including, without limitation, the First Mortgage and the Second Mortgage, have been irrevocably paid in full, or is/are otherwise terminated pursuant to an order of the Court.

14. The proceeds of any sale of the Rent Collateral or any insurance proceeds arising from a partial or total insured loss of the Rent Collateral shall be available for use as cash collateral and/or Rent Collateral. The Debtor shall provide to the Secured Creditors written notice of receipt of any such insurance proceeds within five (5) days after the receipt of such insurance proceeds.

15. All payments including, without limitation, currency, checks, wire transfers, and any other form of cash equivalent, held or received by the Debtor, and all proceeds of the Rent Collateral received by the Debtor shall be held by the Debtor for the benefit of the Secured Creditors unless the Secured Creditors shall be paid irrevocably and in full, or the Indebtedness is terminated pursuant to an order of the Court. The Debtor shall be permitted, however, to deduct from such proceeds the amounts that it is authorized to use pursuant to the authority set forth in paragraphs 2 and 3 of this Order, subject to the limitations of this Order.

16. <u>Reports</u>

Upon the filing of each monthly operating report (the "Operating Report") that is required to be filed and submitted to the U.S. Trustee, the Debtor shall deliver to the Secured Creditors a copy of each such monthly Operating Report.

17. <u>Insurance</u>

The Debtor warrants and represents to the Secured Creditors that all of the Debtor's estate's insurance policies with respect to the Rent Collateral (collectively, the "Insurance Policies") are in effect and that the Debtor will maintain all such coverage that is consistent with the Debtor's historical pre-petition coverage.

18. Without limiting the responsibilities or duties of the Debtor established by this Order, the Bankruptcy Code, Court order, or otherwise, the Debtor shall timely pay all premium amounts for the Insurance Policies as they become due from the Collateral.

19. <u>Defaults</u>

(a) Any of the following shall constitute an event of default ("Event of Default") under this Order:

(1) Any representation or warranty of the Debtor made in this Order being materially false;

(2) Conversion or dismissal of the Debtor's Chapter 11 case;

(3) A final order approving this Order as "final" (which may include a final So Ordered Stipulation) not having been entered, which is no longer subject to rehearing or appeal (and no notice of or request for such rehearing or appeal having been filed or served) ("Final Order");

(4) An order having been entered by the Court, or the Debtor's filing of an application or motion for an order, or appointing an examiner in such case,

unless the Secured Creditors consent thereto;

(5) If a payment of any expenditure, except for those outlined in the 12-month projections, exceeds the sum of $5,000.00 without prior written consent of the Secured Creditor;

(6) The Debtor failing to make any premium or other payments required under the Insurance Policies or maintain all coverage under such Insurance Policies as required by this Order, provided the estate has funds available to pay such Insurance Policy from the Collateral;

(7) The Debtor breaches any other material provision, term, or condition of this Order.

(b) A default under this Order ("Default") shall occur immediately upon written notice by the Secured Creditors or any of them to the Debtor of the occurrence of an Event of Default. Written notice of an Event of Default shall be transmitted by personal delivery, overnight courier, or email transmission with regular mail, and shall be sent to the Debtor and Debtor's counsel as set forth in paragraph 20.

(c) Upon the occurrence of a Default that remains uncured after the Cure Period (defined below) due to an Event of Default pursuant to paragraph 19(a), the Debtor shall be immediately prohibited from using in any manner whatsoever the Rent Collateral. The Debtor shall have the right to cure such Default within ten (10) days of the date of the written notice of Default to Debtor and its counsel (the "Cure Period"). If the Default has not been cured before the expiration of the Cure Period, then the Secured Creditors or any of them may submit an order to the Court vacating the automatic stay, upon seven (7) days' notice to the Debtor, Debtor's counsel, the U.S. Trustee, and any committee appointed herein, and the Secured Creditors shall

have the right to enforce their rights under: (i) their respective mortgage agreements; (ii) the Order; (iii) the Uniform Commercial Code; (iv) the Bankruptcy Code; and (v) other applicable law, all without need for further order of this Court.

20. <u>Notices</u>

Any notices in connection herewith may be transmitted by personal delivery, overnight courier, or email with first class mail:

    1494-1496 CIA, LLC
    c/o Law Office of Gregory Messer
    26 Court Street, Suite 2400
    Brooklyn, NY 11242
    gremesser@aol.com

    CXA 16 Corporation
    c/o Gary F. Eisenberg
    Perkins Coie LLP
    30 Rockefeller Plaza, 22nd Floor
    New York, NY 10112

    Chris and Georgia Fountoukis
    c/o Kristina M. Wesch
    Farrell Fritz, PC
    1320 RXR Plaza
    Uniondale, New York 11556

    Margaret Molinelli and Josephine Licata
    c/o Leonard C. Aloi
    1925 Williamsbridge Road
    Bronx, NY 10461

21. All headings used in the Order are for reference purposes only and do not comprise part of the terms hereof.

22. No failure of the Secured Creditors to enforce any right granted under this Order, the mortgage, or otherwise shall constitute a waiver of such right.

23. Except as expressly set forth herein, nothing in this Order constitutes a modification, alteration, or amendment to the Debtor's obligations to the Secured Creditors

under the First Mortgage or the Second Mortgage.

24. No modification or amendment of any of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto, order ordered by the Court.